## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| JOANN WUNDER *individually and* | ) | |
| *on behalf of the heirs-at-law of* | ) | |
| THOMAS WUNDER, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 13-4014-KGS |
| | ) | |
| ELETTRIC 80, INC.; and | ) | |
| ELETTRIC 80 S.P.A., | ) | |
| | ) | |
| Defendants. | ) | |

### MEMORANDUM & ORDER

This matter comes before the court upon Defendant Elettric 80 SpA's Motion for Summary Judgment (ECF No. 111).[1]  Plaintiff Joann Wunder brings this wrongful death action against Elettric 80 SpA, asserting a strict liability design defect claim under the Kansas Product Liability Act ("KPLA"), K.S.A. 60-3301 *et seq*.  Ms. Wunder alleges that her husband, Thomas Wunder, died as a result of a workplace accident involving a laser guided vehicle barge ("LGV" or "barge") that was assembled and sold by Elettric 80 SpA.  Ms. Wunder claims that the barge in question was defectively designed because it allegedly failed to detect forklifts in its path of travel.[2]  Elettric 80 SpA seeks summary judgment in its favor because Ms. Wunder cannot show that the barge was defectively designed or that any alleged defect caused Mr. Wunder's death. As explained below, the motion is granted because Ms. Wunder has not put forth sufficient

---

[1] The court notes that defendant refers to itself as Elettric 80 SpA in its briefing on this matter.   Ms. Wunder's filings and the docket reflect the name Elettric 80 S.P.A.  The court elects to use in this order the name defendant chooses to use to refer to itself, but with the understanding that the reference is to the defendant manufacturer that is a party in this case, whether its name is spelled Elettric 80 S.P.A. or Elettric 80 SpA.

[2] Pretrial Order at 12, ECF No. 108.  *See also* Mem. in Supp. of Second Mot. for Summ. J. at 4, ECF No. 112-15.

evidence from which a reasonable jury could find that the barge was defectively designed and unreasonably dangerous and caused Mr. Wunder's death.

## I.      Legal Standard

Summary judgment should be granted "if the pleadings, depositions, other discovery materials, and affidavits demonstrate the absence of a genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."[3]  A genuine issue of material fact exists if there is evidence that would allow a reasonable jury to return a verdict for the nonmovant.[4] The court views the record and reasonable inferences therefrom in the nonmovant's favor; but summary judgment may still be warranted if the movant points to a lack of evidence supporting an essential element of a claim on which the nonmovant bears the burden of persuasion at trial, and "the nonmovant cannot identify specific facts that would create a genuine issue."[5]

The movant bears the initial burden to demonstrate the lack of a genuine issue of material fact and that it is entitled to judgment as a matter of law.[6]  "[A] movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim."[7]

---

[3] *Water Pik, Inc. v. Med-Sys., Inc.*, 726 F.3d 1136, 1143 (10th Cir. 2013) (citing *Sally Beauty Co. v. Beautyco, Inc.*, 304 F.3d 964, 971–72 (10th Cir. 2002)).

[4] *Id.* (internal quotations omitted).

[5] *Id.*

[6] *Ascend Media Prof'l Servs., LLC v. Eaton Hall Corp.*, 531 F. Supp. 2d 1288, 1295 (D. Kan. 2008) (citing *Spaulding v. United Transp. Union*, 279 F.3d 901, 904 (10th Cir. 2002) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986))).

[7] *Id.* (citing *Adams v. Am. Guar. & Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998))).

If the movant meets this initial burden, the burden then shifts to the nonmovant to "set forth specific facts showing that there is a genuine issue for trial."[8]  The nonmovant may not simply rest upon its pleadings to satisfy its burden; it must then set forth "specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[9]  This usually requires the nonmovant to set forth facts by referencing affidavits, deposition transcripts, or exhibits.[10]  The nonmovant cannot rely "on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial."[11]   "[S]ummary judgment is not a 'disfavored procedural shortcut;' rather, it is an important procedure 'designed to secure the just, speedy and inexpensive determination of every action.'"[12]

## II.    Uncontroverted Facts

The following facts are either uncontroverted, are viewed in the light most favorable to Ms. Wunder, or are facts to which the parties have stipulated in the final pretrial order.  On May 20, 2011, Thomas Wunder was an employee of Del Monte Food Co. at its pet food production and distribution center in Topeka, Kansas.  Del Monte used laser guided vehicle barges for transporting product in its facilities.  Elettric 80 SpA assembled and installed the barges at Del Monte.  Several safety procedures were in place at Del Monte.  For example, the barges played

---

[8] *Id.* at 1295 (citing *Spaulding*, 279 F.3d at 904) (internal quotations omitted).

[9] *Id.* (citing *Mitchell v. City of Moore*, 218 F.3d 1190, 1197–98 (10th Cir. 2000) (quoting *Adler*, 144 F.3d at 671)) (internal quotations omitted).

[10] *Id.* (citing *Adams*, 233 F.3d at 1246).

[11] *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1998) (citing *Bryant v. O'Connor*, 848 F.2d 1064, 1067 (10th Cir. 1988)).

[12] *Culp v. Sifers*, 550 F. Supp. 2d 1276, 1281 (D. Kan. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1)).

audible tunes to warn workers of their approach.  They had a maximum speed of four to five

miles per hour and had various stop functions including: push-button emergency stops; a pendant

for manual operation; pressure-activated safety bumpers that stopped the barges if engaged; and

sensors that created a laser detection field that would stop the barges when triggered.  The laser

sensors never failed to detect safety cones, which were available to Del Monte employees, and

which Del Monte employees were trained to use when they wished to stop a barge.  There were

two lanes dedicated to barge traffic at Del Monte, one was for eastbound traffic, and one for

westbound traffic.

Some Del Monte employees, including Mr. Wunder, used manually operated forklifts in

their work.  Del Monte had safety rules regarding the use of barges and forklifts and specifically

prohibited the use of forklifts in the barge-dedicated lanes.  The safety rules prohibited any work

or activity in the dedicated barge lanes unless the barges were first stopped using one of the

above-described stop methods.  Mr. Wunder received training on how to safely work around

barges, including the stop functions and use of safety cones.  On May 20, 2011, Mr. Wunder was

operating a forklift when he learned that a pallet of pet treats had fallen off the conveyor belt into

the eastbound barge lane.  Mr. Wunder parked his forklift in the westbound lane and placed a

safety cone in the eastbound lane, which stopped the eastbound barge.  He did not place a safety

cone in the westbound lane or use any of the other authorized stop functions on the westbound

barge.  While he was cleaning up the spilled treats, Mr. Wunder became aware that the

westbound barge was approaching the forklift he placed in the westbound lane.  At that time, Mr.

Wunder began moving towards the barge, fell, and sustained fatal injuries.

The barge involved in Mr. Wunder's accident was tested after the accident and found to

be working properly.  The barge was designed to comport with industry standards requiring

detection sensors to be placed as low as possible to ensure detection of people laying down in its

path of travel. No barge at Del Monte had collided with a person.  The parties stipulate that if

Mr. Wunder fell a sufficient distance in front of the barge, it would have detected him and

stopped.

### III.    Discussion

#### a.  The Kansas Products Liability Act

 "Kansas has adopted the doctrine of strict products liability as set out in the Restatement

(Second) of Torts § 402A (1964)."[13]  "The [KPLA], applies to all product liability claims

regardless of the substantive theory of recovery."[14]  Under the Act, a claim may be "brought for

harm caused by the manufacture, production, making, construction, fabrication, design, formula,

preparation, assembly, installation, testing, warnings, instructions, marketing, packaging, storage

or labeling of the relevant product."[15]

To establish a prima facie case based on strict liability in a products liability action,

plaintiff must prove that "(1) the injury resulted from a condition of the product; (2) the

condition was an unreasonably dangerous one; and (3) the condition existed at the time it left the

defendant's control."[16]  The second element requires "that a product be *both* defective and

unreasonably dangerous."[17]  "Kansas law recognizes three ways in which a product may be

---

[13] *Jenkins v. Amchem Prods., Inc.*, 886 P.2d 869, 886 (Kan. 1994).

[14] *Messer v. Amway Corp.*, 210 F. Supp. 2d. 1217, 1227 (D. Kan. 2002).

[15] K.S.A. § 60-3302(c)

[16] *Messer*, 210 F. Supp. 2d. at 1227 (citing *Jenkins*, 886 P.2d at 886 ).

[17] *Samarah v. Danek Med. Inc.*, 70 F. Supp. 2d 1196, 1202 (D. Kan. 1999) (quoting *Jenkins*, 886 P.2d at 886 (emphasis in original)).

defective: (1) a manufacturing defect; (2) a warning defect; and (3) a design defect."[18]  Ms.

Wunder alleges a design defect.

Kansas courts have relied on comment *i* to Section 402A, also referred to as the consumer

expectation test, to more specifically define the unreasonably dangerous requirement.[19]  It

explains that strict liability under Section 402A

> applies only where the defective condition of the product makes it unreasonably
> dangerous to the user or consumer . . . The article sold must be dangerous to an
> extent beyond that which would be contemplated by the ordinary consumer who
> purchases it, with the ordinary knowledge common to the community as to its
> characteristics.[20]

The plaintiff must "establish the existence of a *specific* defect to prevail on a defective

product claim."[21]  Generally, in a products liability case, the plaintiff may present direct or

circumstantial evidence to prove the elements of her case in chief, but if circumstantial evidence

is used "that evidence must tend to negate other reasonable causes, or there must be an expert

opinion that the product was defective."[22]  In cases such as this, where there is a highly technical

aspect to the design defect alleged, expert testimony is required to establish the standard of

care.[23]

---

[18] *Messer*, 210 F. Supp. 2d. at 1227 (citing *Savina v. Sterling Drug, Inc.*, 247 Kan. 105, 114 (1990)).

[19] *See, e.g.*, *Jenkins*, 886 P.2d at 886 (citing *Lester v. Magic Chef, Inc.*, 641 P.2d 353, 357 (Kan. 1982)).

[20] Restatement (Second) of Torts § 402A cmt. i (1964).

[21] *Samarah*, 70 F. Supp. 2d at 1202 (citing *Jenkins*, 886 P.2d at 889) (emphasis in original).

[22] *Id.* (quoting *May v. Ciba-Geigy Corp.*, 661 P.2d 348, 360 (Kan. 1983)) (internal quotations omitted).

[23] *Ho v. Michelin North America, Inc.*, No. 11-3334, 2013 WL 1277023, at * 8 (10th Cir. Mar. 29, 2013) (explaining
that, in Kansas, the test for whether expert testimony is required is "whether the subject matter is too complex to fall
within the common knowledge of the jury and is beyond the capability of a lay person to decide" (quoting *Gaumer
v. Rossville Truck & Tractor Co.*, 202 P.3d 81, 84 (Kan. Ct. App. 2009)).

Ms. Wunder "asserts a strict liability/design defect claim against Defendant Elettric 80 SpA, under the KPLA based on the alleged failure of the sensor on the LGV barges to always detect forklifts in their path of travel."[24]  Because the parties agree that the barge at issue was in substantially the same condition at the time of the accident as when it left Elettric 80 SpA's control, the only elements at issue are whether there was an unreasonably dangerous condition and whether it caused Mr. Wunder's accident.  Elettric 80 SpA argues that summary judgment is appropriate because Ms. Wunder lacks competent expert testimony, leaving its expert's opinions uncontested.  It also argues that the uncontroverted facts establish that the barge was not defectively designed, and that Ms. Wunder cannot establish that the alleged defective design caused Mr. Wunder's injuries.[25]  As he explained below, the court agrees that Ms. Wunder has not established causation and therefore grants Elettric 80 SpA's motion for summary judgment on that basis.  Because the court grants summary judgment on the causation issue it declines to address Elettric 80 SpA's other arguments for summary judgment.

### b.  Ms. Wunder has not provided sufficient evidence on the issue of causation to submit her claim to a jury

Elettric 80 SpA argues that Ms. Wunder has not come forward with sufficient evidence of causation.  Specifically, it argues that the eye-witness testimony and the expert medical testimony relating to causation are both uncontroverted.  The burden of proof therefore shifts to Ms. Wunder to "set forth specific facts showing that there is a genuine issue for trial."[26]  To

---

[24] Final Pretrial Order at 12, ECF No. 108.

[25] Mem. in Supp. of Second Mot. for Summ. J. at 4–5, ECF No. 112-15.

[26] *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

recover on any products liability theory, Ms. Wunder must prove the defective product is the actual and proximate cause of the injury.[27]

Proximate cause is "that cause which in natural and continuous sequence, unbroken by an efficient intervening cause, produces the injury and without which the injury would not have occurred, the injury being the natural and probable consequences of the wrongful act."[28] Proximate cause incorporates the ideas of causation in fact and legal causation.  "To prove causation in fact, a plaintiff must prove a cause-and-effect relationship between a defendant's conduct and the plaintiff's loss by presenting sufficient evidence from which a jury could conclude that more likely than not, but for the defendant's conduct, the plaintiff's injuries would not have occurred."[29]  "To prove legal causation, the plaintiff must show that it was foreseeable that the defendant's conduct might create a risk of harm to the victim and that the result of that conduct and contributing causes were foreseeable."[30]  "Proof of injury during the use of a product alone is insufficient to establish the causation requirement."[31]

Generally, causation is a question for the jury.[32]  "It may only be resolved on summary judgment where the facts of the case will support only one conclusion and reasonable minds

---

[27] *Markham v. BTM Corp.*, No. 08-4032-SAC, 2011 WL 1231084, at *7 (D. Kan. Mar. 30, 2011) (citing *Miller v. Pfizer Inc.*, 196 F. Supp. 2d 1095, 1125 (D. Kan. 2002)).

[28] *Markham*, 2011 WL 1231084, at *7 (quoting *Hildebrand v. Sunbeam Prods., Inc.*, 396 F. Supp. 2d 1241, 1249 (D. Kan. 2005)).

[29] *Markham*, 2011 WL 1231084, at *7.

[30] *Id.* (citing  *Yount v. Deibert*, 147 P.3d 1065 (2006)).

[31] *Langehennig v. Sofamor, Inc.*, No. 95-1299-MLB, 1999 WL 1129683, at *8 (D. Kan. May 28, 1999) (quoting *Duffee v. Murray Ohio Mfg. Co.*, 879 F. Supp. 1078, 1083 (D. Kan. 1995)).

[32] *Garay v. Missouri Pac. R.R. Co.*, 38 F. Supp. 2d 892, 899 (D. Kan. 1999).

could not differ as to that conclusion."[33]  The court previously denied Elettric 80 SpA's first

motion for summary judgment.[34]  At that time, the parties had conducted limited written

discovery.  Since discovery was ongoing, the court found that Ms. Wunder had produced

sufficient evidence to survive summary judgment at that time, based on witness testimony about

the incident.[35]  Discovery is now complete.  The parties have deposed expert witnesses,

witnesses to Mr. Wunder's accident, and engaged in additional written discovery.  Based on a

careful examination of the parties' briefing and exhibits and their stipulations in the final pretrial

order, the court finds that Ms. Wunder has not sufficiently demonstrated that a defect in the

barge caused Mr. Wunder's injuries.

Ms. Wunder claims that a genuine issue of fact remains about the cause of Mr. Wunder's

death for two reasons.  First, she relies on the expert report and deposition of her medical expert,

Dr. Edward Prostic.[36]  She asserts that Dr. Prostic "identified two potential causes of Plaintiff's

spinal fractures; (1) a crush injury or (2) a high speed collision."[37]  Ms. Wunder argues that a

crush injury is consistent with Pablo Cerca and Courtney Sanders' testimony that Mr. Wunder

dove or ran a few steps before falling.[38]  Mr. Prostic's deposition testimony admits that he has no

objective evidence that Mr. Wunder's spinal injuries were caused by either a crushing event or a

high speed collision.[39]  Dr. Prostic unequivocally stated: "Well, the whole theory of crush injury

---

[33] *Id.*

[34] Mem. and Order at 13, ECF No. 84.

[35] *Id.* at 12.

[36] Resp. at 15, ECF No. 114.

[37] *Id.*

[38] *Id.*

[39] Prostic Dep. 106:4–18, ECF No. 109-15, Prostic Dep. 59:5, ECF No. 112-7.

is a somewhat problem because we have evidence of a blow to the front of the head, but we don't

have good evidence of something on the other side of the body for which we can conclude

there's a crush, so in other words, we don't have signs of abdominal trauma or thoracic trauma or

large bruises about the back or this or that that would prove a crush, so it's just a possibility

rather than the conclusion."[40]  When asked "Would you agree with me, Doctor, that based upon

what you have seen in the medical records that you have reviewed, there is no objective evidence

of crush injury?" Dr. Prostic responded "Correct."[41]  When discussing his theory that Mr.

Wunder's injuries were caused by a high speed collision, Dr. Prostic opined that the barge

needed to be moving "[a]t least 15 miles per hour."[42]  He specifically stated that it "would have

had to have been moving at a substantial speed, not two or three miles per hour."[43]  The parties

stipulate that the maximum speed of the barge in question was four to five miles per hour, much

too slow to deliver the force necessary, even according to Ms. Wunder's own expert.[44]

The report of Elettric 80 SpA's expert, Dr. Gregory D. Jay, is consistent with Dr.

Prostic's admission that a high-speed collision was not a possible cause of Mr. Wunder's

injuries.  Dr. Jay opined that the stipulated speed of the barge could only generate a force of 134

Newtons and that for the barge involved in Mr. Wunder's incident to have caused his injuries it

would have had to strike him with a force of 1700 Newtons or have pushed him 12.7 meters after

---

[40] Prostic Dep. 106:4–12, ECF No. 109-15.

[41] Prostic Dep. 106:14–18, ECF No. 109-15.

[42] Prostic Dep. 59:5, ECF No. 112-7.

[43] Prostic Dep. 58:25–59:2, ECF No. 112-7.

[44] Mem. in Supp. of Second Mot. for Summ. J. at 13, ECF No. 112-15.

hitting him.[45]  Neither of these scenarios are possible under the stipulated facts of this case.  Ms.

Wunder stipulated that the barge was moving at a maximum of four to five miles per hour and

she provided no evidence that Mr. Wunder was pushed across the floor any distance

approximating 12.7 meters.  Ms. Wunder offers no evidence to rebut Dr. Jay's report.  She has

not provided sufficient evidence from which a reasonable jury could find that a crush or high-

speed collision incident caused Mr. Wunder's injuries.  Instead the evidence discussed above

conclusively demonstrates that Mr. Wunder's spinal injuries were not caused by a crushing

incident or high speed collision with the barge.

> Second, Ms. Wunder argues:

> Even if it were established the LGV Barge did not directly contact Plaintiff,
> Defendant's motion should still not be granted.  It is undisputed in this case that
> the LGV Barges manufactured by Defendant did not detect Del Monte forklifts
> and this led to collisions between the two. . . One Electric 80, Inc. employee
> testified there had been approximately *fifty* such collisions between LGV Barges
> and forklifts . . . It is undisputed that the reason Plaintiff ran toward his forklift
> was to prevent a collision between the LGV Barge and the forklift.  Regardless of
> whether the Plaintiff's death was caused by direct contact with the LGV Barge,
> hitting his head on the floor during his fall, or a cardiac event from the stress of
> the event, a reasonable jury could find the defect in the LGV Barge as the actual
> and proximate cause of Plaintiff's death.[46]

 The court disagrees.  As a preliminary matter, the court finds that Ms. Wunder misstates the

facts.  There is no evidence in the record that barges manufactured by Elettric 80 SpA fail to

detect forklifts every time their paths cross.  In fact, it appears that they may only fail to detect

forklifts under a set of very specific circumstances, such as when the forklift forks are raised and

are therefore outside the laser's field of vision.  Ms. Wunder's statement that it is undisputed that

barges do not detect forklifts is incorrect.  Next, Ms. Wunder claims that there have been

---

[45] Second Mot. for Summ. J., ECF No. 109-14 Dr. Jay's Expert Report at 7.

[46] Resp. at 17, ECF No. 114 (emphasis in original).

approximately fifty collisions between barges and forklifts.  The court finds no evidence of this

in the record.[47]  Dennis Mergenmeier's deposition establishes that there were 30–40 instances

where LGVs "came in to contact" with forklifts.[48]  But Mr. Mergenmeier clarified that all but

"several" of these instances were collisions between LGV forklifts and regular forklifts.[49]  He

thought a barge was involved in less than five of these instances.[50]  Mr. Mergenmeier also stated

that "the vast majority" of these incidents took place during "the early stages of the installation in

the distribution center" when the technology was first introduced and the companies were

adjusting the system.[51]

But even if the court accepted Ms. Wunder's view of the facts, her claim would fail

because she cannot establish the accident was reasonably foreseeable.  As discussed above,

foreseeability is an element of proximate cause.[52]  "What we do mean by the word 'proximate' is

that, because of convenience, of public policy, of a rough sense of justice, the law arbitrarily

declines to trace a series of events beyond a certain point."[53]  It is not necessary that a defendant

should have been able to anticipate the precise injury.[54]  A defendant is not responsible for all

---

[47] Ms. Wunder repeatedly cites to page 64 of Exhibit 4, Dennis Mergenmeier's Deposition.  But she failed to attach that segment of the deposition as an exhibit.

[48] Mergenmeier Dep. 109:16–23, ECF No. 116-1.

[49] *Id.* 110:15–25.

[50] *Id.*

[51] *Id.* 111:1–15.

[52] *See, e.g.*, *Markham v. BTM Corp.*, No. 08-4032-SAC, 2011 WL 1231084, at *7 (D. Kan. Mar. 30, 2011); *Aguirre v. Adams*, 809 P.2d 8, 10 (Kan. App. 1991).

[53] *Palsgraf v. Long Island R.R. Co.*, 162 N.E. 99, 104 (N.Y. 1928).

[54] *Aguirre*, 809 P.2d at 10.

possible consequences of his or her negligence, only those consequences which are probable according to ordinary and usual experience.[55]

Here, causation is too attenuated to be legally cognizable.  Even if the court accepted Ms. Wunder's argument that the barge failed to sense a forklift in its path of travel, and that this failure constitutes a design defect, she has not provided sufficient evidence that the barge's failure to sense forklifts caused Mr. Wunder's death.  Even if a design defect exists here, there is no evidence that Mr. Wunder's death was the natural and probable consequence of the alleged defect—the potential of barges to strike forklifts placed in their path of travel.  There is no evidence in the record that barges fail to see people in their path of travel.  At best, Mr. Wunder's injuries were a remote consequence of any alleged defect.  The court finds that regardless of whether Mr. Wunder physically came in to contact with the barge, the facts are too attenuated to attribute liability to Elettric 80 SpA and that there is no legal basis to submit this issue to a jury. Accordingly, Defendant Elettric 80 SpA is entitled to summary judgment.

## IV.     Conclusion

Ms. Wunder has not presented sufficient evidence in the form of deposition transcripts, expert reports, or other evidence that a reasonable trier of fact could find that the barge involved in Mr. Wunder's fatal accident was defectively designed because it failed to always sense forklifts in its path of travel and that this alleged design defect caused Mr. Wunder's death.

Accordingly,

---

[55] *Id. See, e.g.*, *Nelson v. Navistar Int'l Corp.*, No. 10-137-JRT, 2011 WL 5374438 (D. Minn. Nov. 7, 2011) (finding no proximate cause in a case where the plaintiff was driving behind a truck when its driveshaft and other debris fell out, plaintiff drove over it damaging his vehicle, and afterwards during inspection a tire exploded injuring plaintiff.); *Berry v. E-Z Trench Mfg., Inc.*, 772 F. Supp. 2d 757 (S.D. Miss. 2011) (finding no proximate cause where plaintiff snapped himself in the eye with a bungee cord while tying down a groundsaw in the back of his truck and sued the groundsaw manufacturer for failure to warn that the groundsaw could move around during transport).

**IT IS THEREFORE ORDERED** that Defendant Elettric 80 SpA's Motion for

Summary Judgment (ECF No. 111) is granted.

**IT IS SO ORDERED.**

Dated this 30th day of March, 2016, at Topeka, Kansas.

s/ K. Gary Sebelius_____

K. Gary Sebelius

U.S. Magistrate Judge
